**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BOBBY JAMES WILLIAMS, | ) | No. CV-1:05-01649-GMS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| RODERICK HICKMAN, et al., | ) | |
| Defendants. | ) | |

Pending before the Court is Defendants' Motion to Dismiss.  (Dkt. # 29.)  For the reasons set forth below, the Court denies the motion.

## BACKGROUND

In January of 2005, Plaintiff Bobby James Williams was incarcerated at the Salinas Valley State Prison in Soledad, California.  Plaintiff alleges that, on January 11, 2005, Defendants Bracken, Caruso, and Contras placed him in a "stand up holding cage" where he was told he would remain all night.  (Dkt. # 18 at 8.)  Plaintiff claims to have explained to Defendant Bracken that, due to a medical condition, Plaintiff was unable to stand up or hold his bodily fluids for an extended time.  (*Id.* at 9.)  Plaintiff alleges that he was then left in the holding cage for several hours, where he was forced to urinate and defecate in the holding cage and eat "chow covered in . . . human toxic waste."  (*Id.*)  Plaintiff asserts that Defendants Contras and Caruso then placed him in another holding cage where he was forced

1   to stay for seven days.  (*Id.*)  According to Plaintiff, he had no running water, was forced to

2   sleep on the cold floor, and was subjected to other "inhuman[e] conditions."  (*Id.*)  Plaintiff

3   claims that, due to his medical condition, he was supposed to maintain a water intake of three

4   to four liters per day, which he alleges he was not permitted to do.  (*Id.*)  Plaintiff states that

5   his "insides hurt due to this cruel mistreatment."  (*Id.*)

6          On January 20, 2005, Plaintiff filed an official staff complaint, No. 05-00320, with

7   prison officials regarding the aforementioned incident.   (*Id.* at 17.)   The California

8   Department of Corrections and Rehabilitation ("CDCR") has a four-tiered grievance process

9   by which inmates may file complaints about prison conditions with the prison administrators.

10  *See generally Brown v. Valoff*, 422 F.3d 926, 930 (9th Cir. 2005) (providing an extensive

11  explanation of this process).  The initial level of this process is the informal level, at which

12  the prisoner and prison staff are encouraged to attempt to resolve a dispute or complaint

13  without formal procedures.  *Id.*  If an issue is not resolved at this level, the complaint

14  proceeds to the first formal level of appeal, which is "usually conducted by the prison's

15  Appeals Coordinator." *Id.* (citations omitted).  If the appeal is denied at the first formal level,

16  it proceeds to the second formal level, where it is generally reviewed by the head of the

17  institution at which the inmate is housed.  *Id.*  The final level of appeal is referred to as the

18  "Director's Level Review," and is "conducted by a designee of the Director of the

19  Department of Corrections." *Id.* (citations omitted).  Because a decision from this level is

20  not appealable, completion of the grievance process through the Director's Level Review

21  generally marks the exhaustion of all available nonjudicial remedies.  *Id.*

22         Upon filing his staff complaint, Plaintiff was allowed to bypass the informal level and

23  first formal level of appeal.  In a letter he received on March 4, 2005 (Dkt. # 18 at 19),

24  Plaintiff was informed by Chief Deputy Warden Scribner that his complaint was partially

25  granted at the second formal level of appeal and that his "allegations of misconduct [had]

26  been referred for investigation."  (*Id.*)

27

28

- 2 -

1   The standard complaint form used in Salinas Valley State Prison contains a place in
2   which an inmate may request a Director's Level Review. (Dkt. # 18 at 18.)  The instruction
3   heading above this space states: "If dissatisfied, add data or reasons for requesting a
4   Director's Level Review, and submit by mail to the third level within 15 days of receipt of
5   response." (*Id.*)  Plaintiff sought a Director's Level Review by filling out this portion of the
6   form, stating: "I am not satisfied with the response that has been given on this matter.  I am
7   submitting this appeal for further investigation/adjudication." (*Id.*)  Plaintiff did not sign or
8   date this portion of the form, even though the form indicated that he should do so. (*Id.*)  A
9   stamp on the copy of the staff complaint in question submitted by Defendants indicates that
10  on June 24, 2005, Plaintiff's Director's Level Review Appeal was received by the CDCR's
11  Inmate Appeals Branch. (Dkt. # 29 Pt. 5 at 4.)

12   On August 20, 2005, Plaintiff received a letter stating that his appeal was being
13  returned as untimely because "[a]n appellant must submit the appeal within 15 working days
14  of the event or decision being appealed, or of receiving a lower level decision." (Dkt. # 18
15  at 16.)  On December 30, 2005, Plaintiff filed a Complaint about the incident in question in
16  the United States District Court for the Eastern District of California. (Dkt. # 1.)  On August
17  8, 2008, Plaintiff filed his Second Amended Complaint alleging violations of his civil rights
18  pursuant to 42 U.S.C. § 1983. (Dkt. # 18.)  On April 24, 2009, Defendants filed the instant
19  motion to dismiss, arguing that Plaintiff failed to exhaust nonjudicial remedies. (Dkt. # 29.)

20                                  **DISCUSSION**
21  **I.    Legal Standard**

22   "[T]he failure to exhaust nonjudicial remedies . . . should be treated as a matter in
23  abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for
24  summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding
25  a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond
26  the pleadings and decide disputed issues of fact.  If the district court concludes that the

27
28

1    prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim

2    without prejudice." *Id.* at 1119-20 (citation omitted).

3    **II.    Analysis**

4            Defendants argue that this action should be dismissed because Plaintiff has failed to

5    exhaust all administrative remedies as required by 42 U.S.C. § 1997e(a).  (Dkt. # 29 at 3.)

6    42 U.S.C. § 1997e(a) states that "no action shall be brought with respect to prison conditions

7    under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

8    prison, or other correctional facility until such administrative remedies as are available are

9    exhausted."  Defendants assert that because Plaintiff's Director's Level Appeal was rejected

10   as untimely, Plaintiff has only completed the appeal process through the second level.  (*Id.*

11   at 5.)[1]

12           Plaintiff responds by arguing that on March 25, 2005, he "placed his [Director's Level

13   A]ppeal in a postage prepaid envelope and gave the envelope to a correctional officer to be

14   deposited in the United States mail."  (Dkt. # 35 at 7; Dkt. # 35 Ex. 3 at 16.)  Plaintiff argues

15   that because March 25th was the fifteenth working day after March 4th, his appeal was

16   timely, and he "should not be penalized for prison officials failing to ensure that Plaintiff's

17   appeal was delivered in a timely fashion."  (Dkt. # 35 at 7.)[2]

18

19           [1] Defendants also argue that "[Plaintiff] could have responded to the screen out letter

20   with an explanation of the tardiness or, as the letter suggested, consulted with his counselor
     or Appeals Coordinator."  (Dkt. # 39 at 4.)  However, the text of the rejection letter does not

21   inform Plaintiff that he had the option to write a letter explaining the reason for the appeal's
     tardiness.  Nor does the letter explain that the appeal's rejection may be reconsidered if

22   Plaintiff was able to provide a reasonable explanation for the appeal's tardiness, and
     Defendants have not established that Plaintiff was aware of any alternative procedure for

23   pursuing his grievance nonjudicially at that point.  Thus, any such response was not an

24   "available remedy."

25           [2] Plaintiff also argues that his partially-granted second level appeal exhausted all

26   available nonjudicial remedies because, as it was classified as a staff complaint, "there was
     no possibility that it would be investigated again, separately, through the appeals process."

27   *See Brown*, 422 F.3d at 939.  Because the Court relies on the Plaintiff's first argument as the

28   basis for its ruling, the Court need not resolve this alternative argument.

1    Appeals that are submitted after their deadline do not satisfy the statutory exhaustion

2    requirement.  *See Woodford v. Ngo*, 548 U.S. 81, 102 (2006) (overturning a Ninth Circuit

3    opinion holding that a prisoner's appeal that was rejected as untimely exhausts all nonjudicial

4    remedies).  However, it is well-settled in the Ninth Circuit that "[d]efendants have the burden

5    of raising and proving the absence of exhaustion." *Wyatt*, 315 F.3d at 1119.  This is, in part,

6    because "prison officials are likely to have greater legal expertise and, as important, superior

7    access to prison administrative records." *Id.*  Examples of relevant evidence in meeting such

8    a burden "would include statutes, regulations, and other official directives that explain the

9    scope of the administrative review process; documentary or testimonial evidence from prison

10   officials who administer the review process; and information provided to the prisoner

11   concerning the operation of the grievance procedure. . . ." *Brown*, 422 F.3d at 937.  Where

12   the evidence presents a factual issue, "the general view is that . . . the court has broad

13   discretion as to the method to be used in resolving the factual dispute." *Ritza v. Int'l*

14   *Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988).

15   Here, as Defendants do not dispute that the appeal was indeed mailed, they must prove

16   only that the letter was handed to the officer for mailing on a date after March 25, 2005.

17   Defendants have submitted over twenty pages of documentation in an attempt to meet their

18   burden of proof.  (Dkt. # 29 Pt. 2-6.)  Although this litigation concerns just one staff

19   complaint filed by Plaintiff while he was incarcerated at Salinas Valley State Prison, No. 05-

20   00320, the documentation includes the affidavits of five CDCR officers at various levels of

21   employment and various facilities.  The first three affidavits, those submitted by Officers

22   Santiago (Dkt. # 29 Pt. 2), Huckabay (Dkt. # 29 Pt. 3), and Reyes (Dkt. # 29 Pt. 4), do not

23   provide any evidence that contributes to Defendants' burden, as the information contained

24   therein relates to complaints filed by Plaintiff at California Training Facility, Pleasant Valley

25   State Prison, and Mule Creek State Prison, respectively.  The fourth affidavit, that of E.

26   Medina (Dkt. # 29 Pt. 5), does contain information about complaint No. 05-00320, but

27   merely states that the complaint was received on March 3, 2005, that it was classified as a

28

1 "staff complaint," and that it was "granted in part" at the second level of appeal.[3]  This

2 document does not provide any additional information about the complaint in question, nor

3 does it offer any explanation as to what, if anything, may have happened to it at the

4 Director's Level Review stage of the appeal.

5        The fifth affidavit is that of N. Grannis (Dkt. # 29 Pt. 6), whose office is responsible

6 for "review of inmate appeals at the Director's Level, the third and final level of

7 departmental administrative review." (*Id.*)  This affidavit states that Plaintiff submitted only

8 four Director's Level appeals that were accepted for review between January 11, 2005, and

9 December 30, 2005, none of which were No. 05-00320. (*Id.*)  However, the affidavit states

10 that N. Grannis' department "maintains records that show whether the [Inmate Appeals

11 Branch] *accepted* an inmate appeal for a Director's Level Review." (*Id.* (emphasis added).)

12 This document does not state if, or when, Grannis' office received complaint No. 05-00320,

13 much less does it state whether Plaintiff handed the complaint to a guard for mailing on

14 March 25, 2005.

15        The evidence that Defendants have submitted is insufficient to prove that Plaintiff did

16 not hand his Director's Review Level appeal of staff complaint No. 05-00320 to a corrections

17 officer for mailing on March 25, 2005.  Defendants have not submitted copies of any prison

18 mail log, a copy of the postmarked envelope in which staff complaint No. 05-00320 was

19 mailed, affidavits from the guards that were on duty on March 25, 2005, or any other

20 evidence to controvert Plaintiff's statement that he handed the letter to a guard on that date.

21 Defendants therefore have not met their burden of proof.

22        Additionally, Defendants cannot prevail on their argument that Plaintiff's failure to

23 sign and date the appeal makes him incapable of proving that he gave it to a correctional

24 officer on March 25, 2005. (Dkt. # 39 at 4.) Plaintiff did not sign and date his Director's

25 Review Level Appeal, but his failure to do so does not establish that the appeal was untimely.

26

27        [3] The document had also attached copies of four of Plaintiff's five complaints,

28 including a copy of complaint No. 05-00320.

As an affirmative defense, a motion to dismiss for failure to exhaust nonjudicial remedies requires that Defendants affirmatively prove a failure to exhaust those remedies rather than merely point out Plaintiff's lack of evidence.  *Wyatt*, 315 F.3d at 1119.

This case is analogous to *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006), in which the Seventh Circuit overturned a district court's granting of a motion to dismiss for failure to exhaust nonjudicial remedies where a plaintiff asserted that he submitted his appeal for mailing in a timely manner, even though the complaint was never received by the prison's appeal board.  In *Dole*, the inmate plaintiff mailed his complaint by "placing his envelope in the 'chuckhole' of his cell for the guard to pick up and mail."  *Id.* at 807.  Once he was informed that his appeal was never received by the appropriate authorities, and upon belief that another appeal would also have been untimely, the plaintiff filed an action pursuant to 42 U.S.C. § 1983 in federal district court.  *Id.* at 808.  When his complaint was dismissed for failure to exhaust nonjudicial remedies, the plaintiff appealed.  *Id.*  The Seventh Circuit reversed the dismissal, stating that "Dole could not maintain control of his complaint once the guard picked it up. . . . Because Dole properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that Dole failed to exhaust his administrative remedies."  *Id.* at 810-11.

The *Dole* court adopted the logic set forth by the Supreme Court in *Houston v. Lack*, 487 U.S. 266 (1988), stating:

> the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. . . . And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently. . . . The only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

1   *Dole*, 438 F.3d at 812 (citing *Houston*, 487 U.S. at 270-72).[4]  Both the *Dole* and *Houston*

2   courts recognized that this approach introduces the risk that all prisoners will "fraudulently

3   claim that their appeal was mailed within the statutory deadline" when it was not.  *Id.*

4   Nonetheless, both courts held that the risk of unfair prejudice to truthful *pro se* prisoner

5   litigants outweighed the potential danger of other fraudulent claims. *Id.* ("[T]he potential for

6   fraud does not justify obligating truthful prisoners to prove that they mailed their complaints

7   when the prison authorities do not provide them with means for verification."); *see also*

8   *Houston*, 487 U.S. at 270-72.

9          In this case, Defendants have presented no evidence that calls into question Plaintiff's

10  assertion that he handed his appeal to a prison official to be mailed on March 25, 2005.  The

11  evidence submitted by Defendants is therefore insufficient to establish that Plaintiff's appeal

12  was untimely.  As such, Defendants have failed to meet their burden of proving Plaintiff's

13  failure to exhaust available nonjudicial remedies.

14                                      **CONCLUSION**

15         Defendants have not established that Plaintiff failed to exhaust nonjudicial remedies.

16  Therefore,

17         **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Dkt. # 29) is

18  **DENIED**.

19         DATED this 30th day of July, 2009.

20
21         *H. Murray Snow*
                                      _____
22                                      G. Murray Snow
                                        United States District Judge
23
24  _____

25         [4] The Court recognizes that *Houston* adopted the "Prison Mailbox Rule," stating that
    a *pro se* prisoner's legal document is considered to be "filed" with the clerk of the court
26  when it has been given to the prison official that is responsible for its mailing.  Although
    *Houston* is concerned with *pro se* prisoner litigation in the court systems as opposed to the
27  prison appeals process, its rationale is nonetheless relevant to the Court's evaluation of this
28  matter.